IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

        Plaintiff,                                  8:23CR86

vs.

DAVID LEIDERMANN, et al.,

    and                                    PETITION OF FRANCESCA TOSTI
FOR HEARING AND
DETERMINATION THAT
PETITIONER'S INTEREST IN
PROPERTY SHOULD NOT BE
FORFEITED, PURSUANT TO 21
U.S.C. §853(n)

FRANCESCA TOSTI,

        Petitioner.

COMES NOW Petitioner Francesca Tosti, by and through her undersigned attorney, with full assignment of rights from Giacomo Tosti, and Gina Nieto, on behalf of ERDH LLC, Closet Door LLC, and CER ELK LLC, and as Administrator of the Estate of James Reja, and provides this Petition for an Ancillary Hearing pursuant to 21 U.S.C. §853(n), and requests a hearing and a determination that her interest in the following property/items/monies should not be forfeited:

    a. Parcel #007-096-02, 259 Redwood Road, San Anselmo, California (24-CBP-000096) Parcel #007-096-02 (mistakenly listed below (b) in the Notice of Forfeiture, which relates to other property/monies in which Petitioner has no interest).

    b. U.S. funds $2,033,094.98 seized on November 3, 2023, from JP Morgan Chase Account No. 556772583 in the name of Closet Door LLC, C/O Gina Nieto (24-CPB-000115) which was seized from C/O Gina Nieto Closet Door LLC on November 3, 2023, at JP Morgan, located in unk, CA.

    c. REAL PROPERTY AND IMPROVEMENTS LOCATED AT MENDOCINO COUNTY, CALIFORNIA, PARCEL #131-030-03, 131-030-06, 131-030-23, 131-030-24, 131-030-25, 131-010-08, 131-030-01, 131-030-05, 131-030-08, 131-030-31, 131-030-32 & 131-030-33 (24-CBP-000116) (mistakenly listed below (c) in the

1

Notice of Forfeiture).

d. Real property located at Mendocino County, California, Parcel #131-090-24, 9201 S. Hwy 1 Elk, California (24-CBP-000117) Parcel # 131-090-24.

e. Real property improvements located at Los Angeles County, California, Parcel #5021-006-023, 816 Seward Street, Los Angeles (24-CBP-000119).

f. Real property improvements at Parcel #100-090-07, 2125 Dillon Beach Road, Tomales, California (24-CBP-001001) Parcel #100-090-07 (wrongfully foreclosed upon with no notice).

g. $2,033,094.98 from JP Morgan Chase Account (24-ICE-000820) which was seized from James Reja on November 8, 2023 at 13003 W. Center Rd., located in Omaha, NE.

h. $205,358.00 (24-ICE-000821) which was seized from LLC Rago Wright on January 9, 2024 at n/a, located in Omaha, NE

i. Art Smith Modernist Brass Necklace (24-ICE-000873) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy 1, located in Elk, CA.

j. Art Smith Modernist Brass and Copper Cuff Bracelet (24-ICE-000875) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, located in Elk, CA.

k. Set of East Indian Laurel Wood Dining Chairs (24-ICE-000879) which was seized from James Reja on December 123, 2023 at 9980 S. Hwy 1, located in Elk, CA

l. East Indian Laurel Wood Dining Table (24-ICE-000880) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, Elk, CA.

m. George Nakashima American Black Walnut Coffee Table (24-ICE-000881) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy 1, located in Elk, CA.

n. Pair Mira Nakashima Grajalas Nightstands (24-ICE-000883) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, Elk, CA.

o. Arther Espenet Carpenter II Cabinets (24-ICE-000886) which was seized from James Reja on December 12, 2023 at 99980 S. Hwy. 1, Elk, CA.

p. Arthur Espenet Carpenter II Headboard (24-ICE-000887) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, located Elk, CA.

q. Arthur Espenet Carpenter II Mushroom Chest (24-ICE-000888) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy 1, Elk, CA.

r. Jean Prouv Sideboard (24-ICE-000889) which was seized from James Reja on

    December 12, 2023 at 9980 S. Hewy 1, Elk, CA.

    s. JD Blunk Redwood Sculpture (24-ICE-000890) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, located in Elk, CA.

    t. Isamu Noguchi Messenger 2B Bronze Plate (24-ICE-000892) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, located in Elk, CA.

    u. Costa Rican Ceremonial Volcanic Stone Metate (24-ICE-000896) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, Elk, CA.

    v. Axel Einar Hjorth Uto Coffee Table (24-ICE-000898) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, Elk, CA.

    w. Blue Nazca Textile (24-ICE-0008999) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, Elk, CA.

    x. Isamu Noguchi Rudder Stool (24-ICE-000905) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy 1, Elk, CA.

    y. Arther Espenet Carpenter II Bookshelf Cabinets (24-ICE-000907) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, Elk, CA.

    z. Massim Lime Spatula (24-ICE-000908) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, located Elk, CA.

    aa. Olmec Stone Figure (24-ICE-000909) which was seized from James Reja on December 12, 2023 at 9980 S. Hwy. 1, located Elk, CA.

1. I met James Rega (*a.k.a.* James Reja (hereinafter "James Reja," "Mr. Reja," or "Reja")) in or around 2003. During the course of this relationship, I came to understand that he had substantial sources of income from inheritances from his grandfather, invention of a toy that was purchased by Hasbro, a high-end aquarium business, employment in the music industry, construction, and other monies from previous employment. Most of this is a matter of public record and not subject to any reasonable dispute.

2. On October 6, 2012, James Reja and I were married in a ceremony at Tomales Bay, California, on a property owned by my husband, which was witnessed by Gerald Casale. On October 19, 2012, the Marriage Certificate proving the marriage was approved

3

for registration in Los Angeles, California. My husband and I were never legally separated, nor divorced. Although we did, at times, live in separate residences due to mold contamination at certain properties, and due to my husband's sleep apnea issues, we remained married and committed to each other, and our children, until the day my husband died, on November 13, 2023.

    3. Under California law, all assets, and debts, acquired by either spouse during the course of the marriage are generally considered owned equally (50/50) by both, regardless of whose name is on the title, or who earned the income.

    4. It was my understanding that my husband, James Reja, had an agreement with Gerald Casale as to certain real property located at 816 Seward Street in Los Angeles, California, which he referred to as "the studio," and improvements thereto. The terms of this agreement provided that James Reja would design certain improvements to the studio, work to effect these improvements, and supervise the work of licensed contractors, and that in the event the studio was sold, the improved value of the real property resulting from this work on these improvements would be his. James Reja worked in this manner on the studio for years, which substantially increased the value of the Seward Street Property. During this time, I assisted my husband by performing certain tasks related to the design of the improvements, as well as maintenance, and this continued for years. I have a community property interest in these improvements, and a separate property interest based upon my work in connection with these improvements.

    5. During the course of the marriage, I also worked with my husband on the design and restoration of architecturally significant homes (the Kun House in Fairfax Hills, Pueblo Ribera in La Jolla, and other homes), which were sold at a profit. Again, this is a matter of public record. I also assisted in researching works of furniture, fine art, and tribal art. My

life with my husband was focused on these activities and raising my kids. Other than the work I did to help in the design and improvement of architecturally significant homes, and related tasks, I was a stay at home mother, and I had no involvement or in-depth knowledge of any other business or financial activities of my husband. When I needed money for household expenses, or other necessities of life, I would simply let him know, and either monies would be deposited into a checking account, or else, for smaller purchases, I would simply be given cash. During the entire course of my marriage, I never had more than $2,000 in a checking account. I did have credit cards, but my husband did not make payments on them, so they were closed, which negatively impacted my credit. I now understand this was done to control me and to keep me dependent upon him.

6. Shortly after our wedding at the Dillon Beach Road Property in Tomales, California, I assisted my husband in the design of certain improvements, permitting, and construction. Shortly after James' death, I learned this property was foreclosed upon and that I was not given notice. I have a community interest in these improvements, and a separate interest as well based upon my work.

7. In or around 2013, my husband, James Reja, acquired certain real property located at 259 Redwood Road in San Anselmo, California, which is a home constructed based upon plans by Frank Lloyd Wright. I researched these kinds of homes, found one for sale, and assisted my husband in the restoration of the property, as I had done on other projects. I have a community property interest in this property, and a separate interest as well based upon my work. In or around October of 2024, ERDH LLC entered into a settlement agreement to transfer its interest in the San Anselmo Property to Francesca Tosti for the purposes of this proceedings. The California Probate Court has approved this

5

settlement. I have been paying to maintain this property since the Lis Pendens was filed against it.

8. In or around 2016, James Reja acquired certain real property located at 9980 S. Hwy 1, identified in the Notice of Forfeiture as "REAL PROPERTY AND IMPROVEMENTS LOCATED AT MENDOCINO COUNTY, CALIFORNIA, PARCEL #131-030-03, 131-030-06, 131-030-23, 131-030-24, 131-030-25, 131-010-08, 131-030-01, 131-030-05, 131-030-08, 131-030-31, 131-030-32 & 131-030-33 (24-CBP-000116), hereinafter "the Sugarloaf Property." As with other properties, I assisted my husband in the design of structures to be placed on the Sugarloaf Property, and other improvements, and supervised construction, which was paid for with community funds. I have a community property interest in these improvements, and a separate interest as well based upon my work. I have been paying to maintain this property since the Lis Pendens was filed against it.

9. In or around 2017, James Reja acquired certain real property and a double wide trailer located at 9201 S. Hwy 1, Elk, CA, hereinafter referred to as the Cabin Property." This property was acquired to allow us to live in close proximity to the Sugarloaf Property while we were doing the work to put structures and improvements on that property. My husband and I renovated the double wide trailer to make it livable, we converted shipping containers into usable storage space, and installed a solar power grid system, all with community funds. I have a community property interest in this property and the improvements, as well as a separate interest as well based upon my work. On or around October of 2024, CER ELK LLC entered into a settlement agreement to transfer its interest in the Cabin Property to Francesca Tosti for the purposes of these proceedings. The California Probate Court has approved this settlement. I have been paying to maintain this

6

property since the Lis Pendens was filed against it. Gina Nieto, James Reja's mother, is bereft with grief and unable to participate in these proceedings.

10. In or around 2019, my husband acquired certain real property located in Los Angeles known as the Las Palmas Property. As with other properties, I assisted in the research relating to the restoration of this property, supervised construction work, and related activities. I have a community interest in the Las Palmas Property, as well as a separate interest as well based upon my work. The profits from the sale of this property were $2,033,094.98, which was seized by the federal government. I have a community property interest in the profits from the sale of this property, and a separate property interest based upon my work. On or around June 24, 2025, Closet Door LLC entered into an agreement whereby it granted "all right, title, and interest to the $2,033,094.98 that is currently the subject of…proceedings in the United States District Court for the District of Nebraska to Francesca Tosti, both individually, and in her role as Administrator of the Estate of James Reja." The California Probate Court has approved this settlement. Gina Nieto, James Reja's mother, is bereft with grief and unable to participate in these proceedings.

11. Upon information and belief, in 2019, the federal government began surveillance of, *inter alia*, James Reja and Kristina Warren in connection with allegations of drug trafficking which were set forth in a Criminal Complaint in the United States District Court for the District of Nebraska. A s a result of the "heat" Mr. Reja began to feel, and not knowing Kristina Warren was also under surveillance, and with the active participation, and at the urging of, Kristina Warren, Mr. Reja and Kristina Warren went to a law firm in Los Angeles, California for the sole purpose of transferring the Sugarloaf Property from Mr. Rega's name to a sham LLC, Cahto Blue, LLC, purportedly owned and operated by Kristina Warren, in order to avoid the claims of the federal government and Francesca Tosti. Later, Kristina Warren also

convinced my husband to similarly transfer the San Anselmo Property, the Cabin Property, and the Las Palmas Property to sham LLCs. In or around October 2023, a realtor came to the Sugarloaf Property and told me Kristina Warren had sent him to the property to prepare it for sale. Kristina Warren subsequently contacted me by telephone, told me that she was now the owner of the Sugarloaf Property, she laughed at me, and mocked me. To prevent an eviction of me and my children, stake my claim, and to stake the Estate of James Reja's claim to the Sugarloaf Property (once the fraudulent transfer of the property to Cahto Blue, LLC and Kristina Warren is voided, the land compromising Sugarloaf Property would be considered his separate property and would be distributed to the beneficiaries of his Estate to provide for them since my husband is now dead), I filed a Quiet Title Action in federal court in the Northern District of California, which is still pending, and should be, at mimium, stayed in light of these proceedings, which involve the same real property interests. Cahto Blue, LLC, and Kristina Warren, have actively litigated that case, and asserted ownership rights to Sugarloaf, claiming the $1,000,000 "purchase" by Cahto Blue, LLC, was legitimate, despite overwhelming evidence that Kristina Warren was an active participant in the alleged criminal activities of James Reja, and she claimed she did all the paperwork to transfer my husband's real property interests to sham LLCs, including Cahto Blue, LLC.

      12. In or around April of 2020, my husband began to experience severe and debilitating. stress, and began to exhibit symptoms of both significant physical ailments, coupled with debilitating mental disabilities/illness, including what he described as severe brain fog, brain glitches, dizziness, splitting headaches, breathing problems, and nausea. Mr. Reja believed it was attributable to exposure to toxic mold at his Las Palmas residence, resulting in what he described as a strobe light effect in his eyes, breathing problems, hallucinations, fast heart rate, sleep deprivation, not knowing who he was, heartburn, and loss of control of his limbs. My husband began reporting these symptoms to me in April of 2020, and he appeared to be

suffering from them until 2023. In light of this, my husband did not have the mental capacity to understand the legal effect of his actions, including the transfer of his real property interests to sham LLCs.

13. There is substantial evidence supporting a finding that Cahto Blue, LLC is a sham legal entity created solely for the purpose of a fraudulent transfer to avoid the claims of Francesca Tosti and the federal government and that it's the alter ego of Kristina Warren. Kristina Warren has admitted in Mendocino County Superior Court that she has had no income for years, even though she purports to be the Manager of Cahto Blue, LLC. Moreover, Cahto Blue, LLC, which operates no business, somehow allegedly had the funds to pay the $1,000,000 "mortgage" on the Sugarloaf Property. What's more, the Sugarloaf Property, which was originally purchased for $2.35 million, and had over $1.5 million dollars' worth of improvements, was allegedly transferred from James Rega to Cahto Blue, LLC for $1,000,000, a fraction of the value of the Sugarloaf Property. Upon information and belief, there are no actual operating agreements, legitimate offices, employees, legitimate business conducted, or any other lawful activity conducted by Cahto Blue, LLC, it's simply a vehicle by and through which the fraudulent transaction occurred. As Kristina Warren is the sole Manager and Member and Shareholder, Cahto Blue, LLC is nothing more than the alter ego of Kristina Warren.

14. In filings submitted in a Probate Action in Mendocino County and *Marvin* Action, Kristina Warren has made representations that directly contradict her claim that the sham sale/transfer to Cahto Blue, LLC was a "bona fide purchase for value." Upon information and belief, Kristina Warren was directly involved, and had knowledge of, the alleged activities that form the basis of the Criminal Complaint, and she lived at a property the federal government has alleged served as a "counting house" for the alleged money laundering operation; she is not a bona fide purchaser for value; in fact, she claimed she did

all the paperwork behind the transfers of the Sugarloaf Property, the San Anselmo Property, and the Cabin Property to sham LLCs to avoid the claims of the federal government.

15. In or around November of 2023, Giacomo Tosti sold certain items of furniture. and fine art that he acquired earlier in exchange for value, which were sold through LAMA, yielding a profit of $205,358.00. My father's intention was to gift these monies to me to provide for me and my family. On or around January 9, 2024, these funds were seized by the federal government. On or around June of 2025, Giacomo Tosti granted all right, title, and interest to the $205,358.00 in Funds Seized from Rago Wright Account that is currently the subject of….proceedings in the United States District Court for the District of Nebraska to Francesca Tosti, both individually, and in her role as Administrator of the Estate of James Reja. The California Probate Court has approved this settlement. Francesca Tosti stands in Giacomo Tosti's shoes for the purposes of this $205,358.00. Giacomo Tosti is elderly, disabled, and near the end of his life and is unable to participate in these proceedings.

16. Based on the foregoing, I believe I have a legal right, title, and interest in the subject properties referenced and identified above, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest vested in me rather than any of the defendants, or Kristina Warren, or Cahto Blue LLC, and was superior to any right, title, or interest of any of the defendants, or Kristina Warren, or Cahto Blue, LLC, at the time of the commission of the acts which may give rise to the forfeiture of the property under this section.

17. The above monies, fine art, furniture, tribal art, and real properties do not constitute and are not derived from any of the proceeds obtained, directly, or indirectly, as the result of any of the defendants' offenses. I believe they are also not property used, or

intended to be used, in any manner or part, to commit, or facilitate the commission of, such offenses. In addition, the above monies, fine art, furniture, tribal art, and real properties are not traceable to properties or monies involved in such offenses.

18. I maintain a possessory interest in the Sugarloaf Property and have maintained this possessory interest since July of 2023. I maintain a possessory interest in the San Anselmo Property and have maintained that interest since 2013. I maintain a possessory interest in the Cabin Property and have maintained that interest since 2017.

19. As my husband is dead, I step into his shoes as to the purchases of the Sugarloaf Property, the San Anselmo Property, and Cabin Property, such that I am a bona fide purchaser for value, and I was reasonably without cause to believe that any of these properties were subject to forfeiture. In addition, on April 11, 2023, a Criminal Complaint was filed against, *inter alia*, Defendant James Reja. The sole alleged violation was under 21 U.S.C. §846. (Filing No. 1, "Code Section."). No forfeiture allegations were made against Mr. Reja in this Complaint. On November 13, 2023, agents of the Department of Homeland Security Investigations and the US Marshals Service shot and killed my husband in Los Angeles and, accordingly, no claim for criminal forfeiture could ever lie against him, or his real property, or cash, or furniture, or fine art, or tribal art, as criminal forfeiture claims are *in personam*, and he is dead, and can never be found guilty of any predicate crime that would allow for criminal forfeiture. My husband died intestate. Under California probate law, under these circumstances, the spouse inherits the husband's community property interest in any monies, furniture, fine art, tribal art, and real property, and for separate property, the spouse gets 1/3, and the remainder is shared with my husband's children. On November 14, 2023, one day after Mr. Reja's death, a Superseding

Indictment was filed with the Court, this time adding alleged violations of 21 U.S.C. §841(a)(1), 21 U.S.C. §841(b)(1) (Count I), 18 U.S.C. §1956(a)(1)(B)(i) (Count II), and 18 U.S.C. §1956(h), and 2 (Count III).  (*See* Filing No. 75).  In addition and, again, one day after my husband's death, a Forfeiture Allegation was included, for the first time, identifying the property to be forfeited, but at no time prior to his death was my husband ever given notice. None of the foregoing items set forth above, in which Petitioner Francesca Tosti has an interest are subject to criminal forfeiture.

I declare, under the penalty of perjury, under the laws of the state of California, and the United States of America, that the foregoing is true and correct.  Executed on this 13th day of February, 2026.

_____
Francesca Tosti, Individually, as Administrator of the Estate of James Reja, and under an Assignment of Rights by Giacomo Tosti, Gina Nieto, Closet Door LLC, ERDH LLC, and CER ELK LLC

Respectfully submitted,

BY:/s/ *Robert C. Matz*_____
Robert C. Matz
Matz Law Alameda
1516 Oak Street, Suite 104
Alameda, CA 94501
(510) 710-1071
robert@matzlawgroup.legal
Attorney for Francesca Tosti, Individually, and as Administrator of the Estate of James Reja

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on February 13, 2026, the undersigned caused the foregoing to be filed with the United States District Court for the District of Nebraska using the CM/ECF system, which will send notification of such filing to the parties of record, the Clerk of the Court, and Assistant US Attorney Kim C. Bunjer.

                                                                                                   BY: */s/ Robert C. Matz*
                                                                                                       Robert C. Matz
                                                                                                       Matz Law Alameda
                                                                                                       1516 Oak Street, Suite 104
                                                                                                        Alameda, CA 94501
                                                                                                       (510) 710-1071
                                                                                                       robert@matzlawgroup.legal


                                                                                 Attorney for Francesca Tosti,
                                                                                  Individually, and as Administrator
                                                                                  of the Estate of James Reja